## GEORGE MURPHY v. CATHERINE DYSON, *d. b. a.* GRANT STREET AUTO SERVICE, AND OTHERS.[1]

December 13, 1946.

Nos. 34,278, 34,279.

*Freeman & King,* for appellants Catherine Dyson and John A. DeWitz.

*Faegre & Benson* and *Raymond Scallen,* for appellant E. H. Lindquist.

*Eugene A. Rerat,* for respondent.

[1]Reported in 25 N. W. (2d) 291.

MAGNEY, JUSTICE.

Plaintiff recovered a verdict against defendants, Catherine Dyson, John A. DeWitz, and E. H. Lindquist. Dyson and DeWitz jointly and defendant Lindquist separately appeal from a $16,951.75 judgment entered against them.

Dyson owned and operated a public garage in Minneapolis. On the night of the accident DeWitz was in charge. He was more than a mere night watchman, as he was in charge of storing cars and helping customers to park and to get out. He also sold gasoline and oil and made minor repairs. Lindquist was the owner of a 1940 Buick coupé, which he had kept in this garage since 1941.

There was a ramp 90 feet long from the first to the second floor which ran along the east side of the building in a northerly direction. The distance between floors was $12\frac{1}{2}$ feet. Near the second floor, about 75 to 78 feet from the point where the ramp began, it turned abruptly to the left or west. The grade of the ramp was not uniform, being steeper as it neared the second floor. There is no reliable estimate as to the percentage of grade. The ramp was 10 feet wide between walls, with a curb or ledge on each side 11 inches wide and about 6 inches high. Thus the driving surface was a little better than 8 feet wide.

Shortly after midnight of July 2, 1944, Lindquist came to get his car. It was stored on the second floor. The car was usually greased at this garage and occasionally repaired. It had not been assigned any particular parking stall. When Lindquist tried to start his car he discovered that the battery was dead. He called DeWitz, who was on the first floor, and DeWitz came up. The two of them moved the car to the head of the ramp and partly down. At the entrance to the ramp Lindquist got inside the car to steer it. Because of the parking of other cars and the sharp turn to the right, Lindquist could not head it down. Usually he was able to make the turn when parked cars did not interfere with his movements. The front left wheel and the bumper of his car were driven purposely against the east wall of the ramp to stop the car, and the right front wheel was out near the center. In order to make the

turn, it was necessary that the car be pushed back and the wheels turned. The car had gone down the incline several feet. Lindquist and DeWitz tried to push it back but were unable to do so. Plaintiff was on the first floor. Either DeWitz or Lindquist called him to come up and help. Plaintiff had kept his car in the garage since 1932, but had been on the ramp only once prior to this night. He went up. Lindquist was standing alongside his car. He asked plaintiff to help push the car away. The object of pushing the car back was to get it free of the ledge against which its left wheel was placed so that it could go down the ramp. DeWitz told Lindquist to get into the car and said, "We will push." DeWitz told plaintiff to station himself in front about the center of the car, and he himself stood with his back to the wall with his left foot on the fender and his right foot on the curb or ledge. Plaintiff did not start to push until DeWitz told him to do so. Plaintiff testified: "He [DeWitz] was on the east wall, the left front wheel, with his foot on the fender and his back to the fire door, and he says: 'All right, now let's push.'" They started to push the car back. When it had been pushed back from a foot to two or more feet, DeWitz yelled to Lindquist: "All right, all right, come on, come on," and waved Lindquist to come on. The car rolled forward. Plaintiff jumped to the west wall onto the curb or ledge. He testified:

"* * * And I am in the center of the car. And when the car was coming at me, I jumped to the west wall onto that little ledge; and the car took the same course that I did, because the wheels were turned that way, and came right over at me, and crushed me in between the west wall and the car * * *."

Plaintiff was crushed against the wall by the right side of the car. The distance from where he was standing in front of the car to the place where the car struck him was about four feet. There was no previous warning from DeWitz or Lindquist. Plaintiff had expected Lindquist to put his foot on the brake and hold the car after they had wedged it away from the wall, "but Mr. DeWitz started yelling right away to, 'come on, come on,' he didn't give me

a chance to get out of the way into safety." Plaintiff said that the "second the car went back up, it rolled right towards me when Mr. DeWitz started yelling, * * *. It happened so quick I couldn't say that the car came to a stop on the ramp when we pushed it away from the east wall." Plaintiff got out of the way as quickly as he could and succeeded in getting over to the west wall. He was trying to get away from the car and felt that the west wall might be a safe place, but he did not know whether it would be. It all happened very quickly. Concerning the length of time the car remained stationary after it had been pushed back, DeWitz said: "I will tell you, everything happened so fast, so I couldn't say how long, but it was a very little bit of a while." He said he tried to hold the car back, but could not do so any longer, and it came forward. He was thrown off balance. DeWitz had done everything he intended to do. He said, "Everything happened right then" after the car had been pushed back and stopped for a moment. DeWitz was asked:

"* * * What course did the car take from the time it left the position after it paused when you men had pushed it back a distance of two feet up until the time you saw the car stop?

"A. I don't know just how to answer that * * * because when that car moved it moved awful fast.

*    *    *    *    *

"Q. And when things started to happen, they happened very fast?

"A. That is right. * * * Things did move awful fast."

After plaintiff had been struck, the car continued on down the ramp and gouged the west wall as it went down.

The only question in this case is whether the evidence supports the verdict. On the related facts, the jury found both DeWitz and Lindquist negligent and plaintiff free from contributory negligence. DeWitz and Lindquist each placed the blame on the other, and Lindquist argues that plaintiff also was negligent.

The evidence clearly supports the finding that Lindquist was negligent. After the car had been pushed back, he did not retain

control of it, and it rolled forward suddenly and very fast. The car weighed almost 3,800 pounds, and Lindquist should have realized that on the steep grade of the ramp an object of this weight, by reason of the force of gravity and its own momentum, would travel downward very fast. Evidently he did not know the position of the front wheels of his car, and he shot over toward the right instead of straight down the ramp. And apparently, and most serious of all, although he knew that plaintiff was or had been directly in front of the car pushing it back and in a very narrow alley where the car would overhang the low ledge, he did not look out for plaintiff's safety.

DeWitz claims that this negligence on the part of Lindquist insulates negligence, if any, on his part. DeWitz was in charge of the garage and also took charge of the immediate situation. He gave all the directions as to how the car should be moved. He ordered Lindquist into the car. He directed plaintiff to push, and when and where he was to do so; and, after the car had been pushed back sufficiently to enable it to proceed down the ramp, knowing how the wheels were turned and without seeing plaintiff or knowing his whereabouts, apparently impatient, he ordered Lindquist to "come on, come on," and waved him on. He failed to warn plaintiff before giving the order. DeWitz should have seen to it that plaintiff was in a safe place before he gave the order to Lindquist to come on. In the situation here, DeWitz should have anticipated that injury might result if he directed the forward movement of the car without warning plaintiff and before plaintiff was in the clear. On such facts, it would seem that the negligence of DeWitz was still operating and that Lindquist's negligence had not operated to insulate it. Lindquist and DeWitz were so intent on getting the car on its way down the ramp that they forgot about plaintiff. It seems that both Lindquist and DeWitz should have looked out for plaintiff and waited until he had found a place of safety. In our opinion, the proximate cause of the accident was the concurrent negligence of Lindquist and DeWitz. See, Griffiths v. Wolfram, 22 Minn. 185; Ferraro v. Taylor, 197 Minn. 5, 265

N. W. 829; Johnson v. Land O'Lakes Motor Co. 218 Minn. 404, 16 N. W. (2d) 466; Walker v. Stecher, 219 Minn. 152, 17 N. W. (2d) 317; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

The recited facts indicate that the jury was fully justified in finding plaintiff free from contributory negligence.

Judgment affirmed.