# WILLIAM G. LIEBELT v. W. H. KRAUSE.[1]

February 1, 1952.

No. 35,585.

*Dell, Rosengren & Rufer,* for appellant.
*Robert J. Nowack,* for respondent.

KNUTSON, JUSTICE.

Plaintiff is a resident of Minneapolis. In 1943 he acquired a farm in Aitkin county. Defendant owned a neighboring farm. Plaintiff's buildings were located about half a mile from a public highway. During 1949, plaintiff had constructed a driveway from the public highway to his buildings. The road was built by having a bulldozer push the material from the side of the driveway to the center. On each side of the roadway there were cut perpendicular banks from 18 to 24 inches deep, the roadway sloping gradually from the bottom of the cut so made to the center of the road. There was no gravel on the road, the entire surface being covered with clay;

[1]Reported in 51 N. W. (2d) 667.

and, because of the fact that it was raining on the day the accident here involved occurred, the road was exceedingly slippery. On both sides of the highway above the bank there were trees and brush.

On November 12, 1949, plaintiff was at his farm working on the buildings. The weather was miserable and it was raining. During the morning of that day, plaintiff took his rifle and walked to the highway, which was about half a mile away, intending to do some deer hunting. He met defendant, and they returned to the farm buildings together. While there, they heard some shooting in the distance and decided to investigate to find out if deer had been shot. Plaintiff's wife had taken his car for the day, so defendant walked to his farm and obtained his truck. The truck was a 1937 model Ford with cab and chassis and a long wheel base 158 inches in length. Directly above the rear dual wheels was a gravel box which was manually operated. There was quite a gap between the rear of the cab and the front end of the gravel box, and in the intervening space the frame of the truck was exposed. A distance of 5½ feet intervened between the front of the right rear dual wheels and the rear of the cab. The top of the cab was 6½ feet from the ground. The distance from the front of the hood to the window of the cab was 4½ feet. After he obtained his truck, defendant met plaintiff on the highway and they proceeded on the errand they had planned. They returned to plaintiff's driveway about 5:30 or 6 p. m.

There was some talk about plaintiff's getting out of the truck and walking home, but defendant thought that the road was passable, since it had then quit raining. He accordingly started along the driveway, but when about halfway to the buildings he slid into the ditch, so that the right wheels, both front and rear, were up against the bank on the right side of the roadway, and there he became stuck. Defendant tried to get out, but was unsuccessful. Both parties then got out of the truck to survey the situation and conferred about what should be done. It was then "pitch dark." They procured some brush and broken trees and put them under the right rear dual wheels. Defendant then got back into the truck.

Plaintiff went to the rear and pushed on the rear of the box. The truck moved a short distance ahead and again dug in. Plaintiff was spattered with mud from the rear wheels. Defendant again got out of the truck, and the parties again looked the situation over. Thereafter, defendant got back into the truck, and plaintiff went around on top of the bank on the right side of the truck. He placed his right hand on the door post of the cab and his left hand near the top right rear corner, and, standing with his feet approximately 18 inches behind the cab, he leaned over at an angle of about 45 degrees and pushed on the truck with all his might. With defendant applying the power and plaintiff so pushing, they made two or three attempts to get back onto the road, but were unsuccessful. The truck did move forward slightly during these attempts. On the fourth attempt, the wheels obtained traction, and the truck went up onto the road quite abruptly. The movement was faster than plaintiff had expected, and he lost his balance and fell forward. He tried to grab the frame of the truck and missed it. The rear right dual wheels caught his heel and ran over his leg and shoulder, causing very severe injuries.

Plaintiff testified that while he was pushing on the cab of the truck the window was open and that he and defendant talked to each other. Defendant denied this, testifying that he did not know that plaintiff was there or that he was pushing.

Plaintiff admitted that he knew that the front wheels were turned to the left. While he testified that he and defendant discussed the possibility of getting the truck over a slight rise a short distance ahead of them so that they would be on a downgrade and would probably find it easier to get the truck to go back onto the road, he did not deny that he knew that the front wheels were turned to the left, and he admitted that the truck went where they were trying to get it to go. After the wheels obtained traction, defendant drove about 30 feet until he was on top of the road and then stopped. When plaintiff did not appear, he got out of the truck, went to the rear, and found plaintiff lying in the ditch.

The jury returned a verdict of $5,000 for plaintiff. The appeal is from the judgment. The only question raised here is the sufficiency of the evidence to sustain the verdict. Defendant contends that there is no evidence of actionable negligence and that plaintiff assumed the risks incident to the hazards existing; consequently, that he is guilty of contributory negligence as a matter of law.

Plaintiff admits that the position he took in pushing on the truck was that of his own choosing. Defendant did not request that he push at all. Plaintiff decided not only that he should push, but where he should stand, where he should place his hands, and how hard he should push. He knew that the wheels were turned to the left. The truck went where the parties desired it to go. On rebuttal, plaintiff was permitted to testify, apparently as an afterthought, as follows:

"Q. Mr. Liebelt, during the time that the truck was stuck did Mr. Krause make any statement to you concerning a rise in the road?

\*     \*     \*     \*     \*

"A. Positively.

"Q. What did he say?

"A. That there was a little rise in that road, and Mr. Krause made the statement, 'We will try it once more; if we can get down just a little farther we will be going over the rise and we can probably get going then and get back on the road.'"

Even if we accept this testimony as true, it still does not detract from his admission that he knew that the front wheels were turned to the left and that the truck finally went where they were trying to get it to go. On previous attempts the truck had moved forward. Obviously, the front wheels were sliding more or less sideways in the mud. It is possible that both parties thought, even if the wheels continued to slide, that they might find the truck easier to steer if they were able to cross the rise in the road. However, plaintiff was in at least as good a position as defendant to know that if the wheels obtained traction there was a possibility that the front wheels might carry the truck in the direction in which they were pointed. About the only thing that can be said is that the wheels

took hold better than plaintiff thought they would. Beyond that, they accomplished exactly what both parties were trying to do. Defendant was seated on the side of the truck opposite to the place where plaintiff was standing. His efforts were directed toward trying to steer the truck back onto the road. We fail to find any evidence of negligence on his part.

Even if it could be held that defendant was negligent, plaintiff clearly was guilty of contributory negligence which proximately contributed to causing the injuries for which he now seeks to recover. In placing himself in the position which he assumed, knowing that the wheels of the truck were pointed to the left, with the power on the drive wheels, and that if they succeeded in doing what they were attempting to do the truck would move exactly as it did, plaintiff must be said to have assumed the risks incident to the dangers of the position which he took and which he alone controlled. Plaintiff contends that he expected the truck to go straight forward instead of to the left; but he knew that the wheels were turned to the left, and he must be charged with the knowledge common to all that if the front wheels performed the function for which they are intended the truck in all probability would go in the direction in which they were turned.

Plaintiff relies mainly on Murphy v. Dyson, 223 Minn. 19, 25 N. W. (2d) 291. The facts in that case are not at all similar to those in the instant case. There, defendant Lindquist went to get his car, which was stored on the second floor of a garage. A ramp ran from the first to the second floor. Lindquist found that his battery was dead, whereupon he and defendant DeWitz, who was in charge of the garage, moved the car to the head of the ramp and partly down. At the entrance to the ramp Lindquist got inside the car to steer it; but, because of the parking of other cars, he could not make the turn and head his car down. Accordingly, the left front wheel and the bumper of the car were driven purposely against the wall of the ramp to stop the car. In order to make the turn, it was necessary that the car be pushed back and the wheels turned. Lindquist and DeWitz were unable to do so, and they asked

plaintiff to help. After plaintiff and DeWitz had pushed the car back a couple of feet, DeWitz yelled to Lindquist to "come on, come on" (223 Minn. 21, 25 N. W. [2d] 292). The car rolled forward. Plaintiff was still in front of the car. He attempted to jump out of the way, but was crushed between the wall and the car. DeWitz was in charge of the situation. He gave the orders, both to plaintiff and to Lindquist. We held that he should have seen to it that plaintiff was in a safe place before he gave the order to Lindquist to come on. We held that Lindquist should have kept control of the car until plaintiff was out of danger. In that case, plaintiff had no chance to get out of the way. He had no reason to expect that defendants would run over him before he could get out of the way. Plaintiff was not injured while he was performing the task he had undertaken, but was injured after it had been completed. In the case now before us, the injury occurred as a result of the success of the operation which plaintiff, together with defendant, was attempting to accomplish. The very thing happened which they should have assumed might happen. It may be that plaintiff did not expect that their efforts would succeed; but the fact that they were successful in accomplishing what they were endeavoring to do, even if we could say that plaintiff did not expect to succeed, does not detract from the fact that plaintiff alone controlled his own actions; nor should it shift to defendant responsibility for the result which followed, on the theory that he also should have anticipated that plaintiff was taken by surprise when the operation turned out to be successful.

Defendant's motion for a directed verdict should have been granted.

Reversed.