# AVIS E. YURKEW AND ANOTHER v. ALBERT L. SWEN AND ANOTHER.
## JAMES W. TAYLOR, RESPONDENT.

89 N. W. (2d) 723.

April 25, 1958—No. 37,378.

*Dorfman & Rudquist* and *John H. Ramstead,* for appellants.

*Meagher, Geer, Markham & Anderson, M. J. Coyne,* and *O. C. Adamson II,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying a motion for a new trial.

The case arises out of alleged injuries which plaintiff claims she sustained as the result of the negligence of defendants. Many of the facts are not in dispute. The case involves the operation of several automobiles on an extremely slippery highway.

On March 3, 1955, at about 8 o'clock in the evening, Avis E. Yurkew, who will be referred to hereinafter as plaintiff, was driving an automobile owned by her husband, Anthony Yurkew, in a northerly direction on University Avenue Northeast in Minneapolis. University Avenue Northeast, at the point involved, runs generally north and south. Forty-seventh Avenue Northeast runs east and west, crossing University Avenue at right angles. University Avenue, from Fortieth Avenue to Forty-seventh, slopes downward in a northerly direction, the slope being broken by 3 or 4 short plateaus or flat areas. On the evening in question this roadway was covered with ice and was in a very slippery condition, which existed generally throughout the city on this evening. It was dark at the time of the events related herein, and the use of headlights was necessary.

As plaintiff proceeded down University Avenue, a car, occupied by one Mrs. Claire McLeod and driven by her daughter, preceded plaintiff by 3 or 4 car lengths, and another unidentified automobile preceded the McLeod car. All were traveling at about 15 miles per hour or less because of the slippery condition of the street although this area is zoned for a maximum speed of 45 miles per hour. As they approached Forty-seventh Avenue Northeast, plaintiff observed the taillight of the first car go on, and it turned to the right on Forty-seventh Avenue. She then saw the taillight on the McLeod car go on, and it began to spin around on the highway. It made a complete turn around. Plaintiff tried to turn into the ditch on her right but could not control her car, and, instead, it went to the left and ran into the side of the McLeod car. The

right front corner of plaintiff's car collided with the left front door and side of the McLeod car. When they came to rest, Mrs. McLeod's car was facing northwest; plaintiff's car was facing substantially north; and both cars were in the right-hand lane of the road.

Shortly after this collision, defendant Albert L. Swen came from the south, driving a small pickup truck. Seeing the cars stalled ahead of him, Swen drove to the side of the road and stopped with his right wheels on the shoulder about 100 feet south of where plaintiff's car was stalled. After ascertaining that no one was injured in the McLeod car, plaintiff walked to the Swen truck. Plaintiff testified that she walked up the side of the road where the tarvia and the shoulder came together. Swen testified that she walked up the middle of the road. In any event, plaintiff took a position near the front end of the Swen truck and stood on the road to the left of the front door or to the left of the front fender, some 2 or 3 feet out from the Swen truck, and asked him to call the police. While standing there, defendant James W. Taylor came from the south and in some manner ran into the rear of the Swen truck, propelling it forward. The Swen truck came to rest on the left side of plaintiff's car. The Taylor car wound up in the east ditch. Thereafter, a large semi tractor-trailer came down the hill. Apparently the driver saw the stalled cars and, in an effort to avoid running into them, ran into the ditch and seriously damaged his truck and trailer. The point where he ran into the ditch was about three-quarters of a block or a block south of the place where the Swen truck was standing.

Neither plaintiff nor any other witnesses who testified at any time saw the Taylor car approaching from the south. It is admitted that the Taylor car did not hit plaintiff. The only testimony as to any contact with the Swen truck is her own, which is as follows:

"A.  * * * I asked him [Swen] to call the police.

"Q.  What occurred after that?

"A.  I heard this roar, I felt a pain, and that is all I know.

"Q.  You heard a roar?

"A.  Yes.

"Q.  Can you identify that roar as the roar of some particular thing?

"A.  Well, it sounded like a car coming.

"Q. Sounded like an automobile engine?

"A. Yes, you know when you are sitting listening, one came by, that is what it sounded like.

"Q. Sounded like an automobile approaching?

"A. Yes, I didn't know whether it was coming or going, but I heard it.

"Q. You felt an impact, you say?

"A. Yes.

"Q. That is a blow of some sort to your body?

"A. Yes.

"Q. You do not remember anything after that?

"A. Just the sensation of going around and around."

On cross-examination she testified:

"Q. And if I understand your testimony on direct examination correctly, now while you were standing out on the pavement on the slippery roadway talking with this Mr. Swen, you never saw the Taylor car at any time, is that right?

"A. That is correct.

"Q. And the noise that you heard, you did not know where it came from?

"A. No.

"Q. You did not know if it came from the north, south, east or west, you just heard the noise?

"A. I just heard the noise.

"Q. That is the last you remember?

"A. I remember spinning around or sensation of spinning, the impact."

Mr. Swen testified that, when his car was hit by the Taylor car, it "shot parallel out on the highway, sort of sideswiped her [plaintiff's] car and rested alongside her car, that is where it stopped." He neither saw the Taylor car nor heard anything before he was hit. He testified that when he got out of the car, which was only a few seconds after being struck, plaintiff was standing on the shoulder halfway between the Taylor car, which then was in the ditch, and his car. She was talking with some people who had appeared on the scene. He went over and

talked to her, and she did not complain of being hit at that time, and there was no indication that she had been hurt. Thereafter the semi ran into the ditch some distance to the south. At that point plaintiff fainted, and Swen caught her before she hit the ground. Swen said that, after she fainted, he and Taylor helped her to her car. She was first seen there by an officer who later appeared on the scene.

None of the witnesses who were called knew where the Taylor car came from or how it happened to hit the Swen truck. The damage to the Taylor car was in the rear. The trunk and left rear end were damaged. The testimony of a police officer who arrived on the scene was that the damage to the Taylor car was to "The entire trunk, entire back including the back window."

At the close of plaintiff's testimony the court dismissed the action as to defendant Swen and directed the jury to return a verdict for defendant Taylor both on the grounds that no actionable negligence had been established and that plaintiff was guilty of contributory negligence as a matter of law.

At the outset, it is evident that the roadway on which plaintiff claims to have been injured was so slippery that it was next to impossible to control a car. Plaintiff does not complain of the dismissal as to Swen. There can be no doubt that he was free from any actionable negligence. As to Taylor, no one knows what happened. No witness saw him prior to the collision, and Taylor was not called to give his explanation of what happened. Whether, like Mrs. McLeod, he was spinning around, unable to stop or control his car as a result of an effort to avoid the automobiles blocking the right side of the highway, or what happened, no one knows. The damage to the rear of his car indicates that he was either spinning around or sliding backward at the time of the impact. The driver of the large semi truck which came over the hill last of the cars that went out of control managed to go into the ditch.

■ We have frequently held that skidding alone is no evidence of negligence.[1] Usually, where there is evidence as to the conduct of the driver of an automobile preceding or following skidding from which an

[1]Cohen v. Hirsch, 230 Minn. 512, 42 N. W. (2d) 51.

inference of negligence can be drawn, the question is for the jury.[2]

■ Here, however, there is nothing from which an inference of negligence could be drawn except the fact of the collision and the evidence that the Taylor car was damaged on its rear. The inference is more reasonable that the Taylor car was spinning around, trying to avoid the stalled cars, out of control than anything else. Coupled with this remains the fact that plaintiff does not know whether the Swen car hit her or what happened. A verdict cannot be permitted to rest on such tenuous grounds.

■ Aside from proof of actionable negligence, we think that it is clear that plaintiff was guilty of contributory negligence as a matter of law. She knew that the road was extremely slippery. She, herself, had experienced the difficulty of controlling a car on this slippery highway. She had observed others who could not control their cars. In spite of this knowledge, she voluntarily took an extremely hazardous position on the highway without paying any attention to the approach of other automobiles from the south. Under these circumstances, it must be held that she assumed the risk of the position which she voluntarily took on this highway.[3]

It therefore was proper to direct a verdict in favor of defendants.
Affirmed.

---

[2]Svercl v. Jamison, 252 Minn. 8, 88 N. W. (2d) 839.
[3]Lindgren v. Sparks, 239 Minn. 222, 58 N. W. (2d) 317.