ROBERTA M. BESCO v. JOSEPH FRANKEN AND ANOTHER.

101 N. W. (2d) 431.

February 19, 1960—No. 37,841.

*Nichols & Gillard,* for appellant.
*Alderson, Catherwood, Kelly & Ondov,* for respondents.

DELL, CHIEF JUSTICE.

This is an action to recover damages for personal injuries. The jury returned a verdict in favor of plaintiff in the sum of $12,070 and she appeals from an order granting defendants' motion for judgment notwithstanding the verdict.

On March 14, 1957, plaintiff was employed by the Mid-Continent Quilting Company at its plant in Albert Lea, Minnesota. Defendant

Joseph Franken was the manager of that plant. In the afternoon of that day Mrs. Franken, also a defendant, drove her husband's 1954 Chrysler automobile onto the plant's premises and became mired in the mud. In response to a request from the "acting foreman" of the plant, plaintiff and two other employees went outside to assist Mrs. Franken. It was raining at the time and the plant yard was very muddy. The car was on an incline with its left front lower than its right rear. The plaintiff took a position on the left side of the car near the rear fender. Others took positions at the front and right rear of the car. They then attempted to free the car by "rocking" it. As they would push or pull forward Mrs. Franken would accelerate in forward gear, and when they pushed backward she would put the motor in reverse. After several attempts were made in this manner, the car skidded sideways or "fishtailed" some 4 to 8 inches, with the left rear moving downgrade towards the plaintiff. According to plaintiff, who was standing ankle-deep in mud, the movement caused her to lose her balance and she "twisted" her ankle. The record is not clear whether the fishtailing occurred when the car was being rocked forward or when it was in reverse.

Mr. Franken, who saw his wife when she first became mired in the mud, went to the scene but did not ask anyone for assistance. He testified that he intended to call the American Automobile Association, of which he was a member, to extricate the car. Apparently neither of the defendants exercised any particular supervision over the "rocking" operation except that Mrs. Franken was driving the car.

■ Judgment notwithstanding the verdict cannot properly be ordered unless the evidence, viewed in a light most favorable to the verdict, is so clear and conclusive as to preclude a reasonable difference of opinion among fairminded men.[1] Applying this rule to the instant case, it must be conceded that the jury was justified in concluding that the injuries complained of did result from the skidding of the automobile while it was being operated by Mrs. Franken. However this evidence standing

---

[1]Olson v. Penkert, 252 Minn. 334, 90 N. W. (2d) 193; McDonough v. Newmans Cloak & Suit Co. 247 Minn. 250, 77 N. W. (2d) 59, 61 A. L. R. (2d) 100; Malmquist v. Leeds, 245 Minn. 130, 71 N. W. (2d) 863.

alone is not enough to establish negligence. In addition, there must be evidence of conduct on Mrs. Franken's part from which an inference of negligence can reasonably be drawn.[2]

It is a common practice, in attempting to extricate automobiles from snow or mud, to use the "rocking" device such as was employed in the instant case. The operator of the vehicle applies motor power alternately in forward and reverse gears while the vehicle is being pushed from the outside in the same direction. It is commonly recognized, and the evidence here shows, that frequently during the course of such an operation the car will skid sideways or "fishtail." We can find nothing in the record here indicating that Mrs. Franken's part in the undertaking was performed in a careless or negligent manner or that the result was anything other than what might ordinarily and reasonably be expected.

The only claim of negligent conduct asserted by the plaintiff is that Mrs. Franken increased the speed of the motor while the car was being "rocked." The plaintiff testified in this regard as follows:

"Q. Do you remember how many times you tried to run it back and forth, was it once or several?

"A. It was several times, we had been working at it.

"Q. And one of these times will you tell us what happened to the back end as you were going back?

"A. Well, the one time as it was coming back, we couldn't rock it back and forth very much at all because it was in the mud so deep, it was just a very little bit, and we would rock it, *but at one she put the gas on a little bit too much* and it came back and slid sideways overbalancing me.

\* \* \* \* \*

"Q. When that car came toward you, whenever it was, how would you describe that a little clearer than you gave it to me this morning?

"A. Well, we were pushing on it, Mrs. Heska and myself were on

---

[2]See, Svercl v. Jamison, 252 Minn. 8, 88 N. W. (2d) 839; Yurkew v. Swen, 252 Minn. 277, 89 N. W. (2d) 723; Cohen v. Hirsch, 230 Minn. 512, 42 N. W. (2d) 51.

the rear, I was on the left-hand side, her on the right, the other, the three men were in the front of the car, and we was rocking it back and forth, and as it went to come back *Mrs. Franken give a little bit too much gas* and it come back, and instead of coming back like it should have, it slid sideways right toward me overbalancing me, twisting my ankle." (Italics supplied.)

The only other testimony regarding an increase in acceleration was that of Doris Heckes, another employee who assisted Mrs. Franken. She testified:

"A. Well, we tried to rock the car, and all at once, when you went —stepped on the gas to go ahead, it kind of slid to the side, and that is when it seemed like it pushed that way towards Roberta [plaintiff], and it didn't move the car, though, I mean, it couldn't get out of there, just went sideways.

"Q. Did you notice whether the motor was speeded up or anything to do that?

"A. Oh, yah, you have to step on the gas a little bit.

"Q. What happened then, just tell what happened. It was forward, and then how did it come back? Did you hear the motor rev up?

"A. Going back, you mean?

"Q. Yes.

"A. Well, I think she let up, I think, on the accelerator going back, but go ahead *she raced the motor.*

"Q. How about power coming back, could you tell whether she had the power coming back when it skidded that time?

"A. Well, I don't know whether it would be on going back or not.

"Q. Well, if it skidded sideways were the wheels moving to skid sideways?

"A. Yah.

"Q. What would that indicate to you? The wheels were spinning?

"A. Well, I would—

"Q. Would they spin without the power on?

"A. No, I suppose not.

"Q. Well, what actually happened when that car came back that time when it went over toward Roberta's side?

"A. Well, she was stepping on the accelerator to go ahead, and then we tried to go back a little bit and just keep rocking, and it slid sideways." (Italics supplied.)

At best this evidence does nothing more than establish that there was an increase in acceleration, which, after several futile efforts to free the car, might reasonably be attempted by any ordinarily prudent person. Neither the plaintiff's testimony nor that of Mrs. Heckes can be construed as establishing that Mrs. Franken suddenly and unexpectedly "gunned" the motor. Mrs. Heckes obviously had difficulty in expressing herself, and her use of the term "raced the motor" cannot fairly be taken literally or out of context with the rest of her testimony. Merely because the increase in power, in plaintiff's opinion, caused the car to "fishtail" does not, in itself, render Mrs. Franken's conduct negligent, particularly since the "fishtailing" was something that might ordinarily be anticipated. In our opinion the record is simply devoid of any evidence which could reasonably be said to support a finding that Mrs. Franken deviated from the ordinary standard of care imposed upon her.

■ Moreover, the evidence conclusively establishes that plaintiff assumed the risk involved, prohibiting her recovery regardless of the defendants' negligence. The doctrine of assumption of risk may be invoked where it appears that the plaintiff, having actual knowledge of the risk, freely and voluntarily chooses to incur it.[3] At the time of the accident plaintiff was 22 years old. For several years she had worked on her father's farm, doing the same work that a hired hand would perform. She had previous experience in extricating cars from mud and snow, both by pushing and by towing with a tractor. While she also had some difficulty in expressing herself, it seems clear that she was familiar with the fact that cars frequently "fishtailed" when being "rocked" out of mud and snow. She testified:

"Q. When you would see a car, or help push it out in your past experience, did you ever have any experience with the car fishtailing a little bit one way or the other?

---

[3]Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; 13 Dunnell, Dig. (3 ed.) § 7041a.

"A. Yes. I just never had any experience like this happen to me before.

"Q. You have never had any experience when a car has been stuck in the mud of it fishtailing?

"A. Yes, I have saw cars stuck in the mud when they go in, if you try to pull them, they will slide one way or the other if it is muddy."

The only inference that can be drawn from this testimony is that plaintiff, by reason of her experience, appreciated the probability of the car fishtailing. The circumstances in the instant case are analogous to those in Liebelt v. Krause, 235 Minn. 547, 51 N. W. (2d) 667. In that case a truck had become mired in the mud in a ditch and, in attempting to extricate it, the defendant applied motor power while the plaintiff pushed from the outside. After several such attempts the wheels caught hold and the truck went up onto the road. The plaintiff lost his balance and fell underneath one of the rear wheels. This court held that the plaintiff assumed the risk of the danger involved, pointing out that he alone controlled his own actions and the consequences should reasonably have been anticipated by him.

Plaintiff seeks to distinguish the Liebelt case on the ground that the plaintiff there had a freedom of choice whereas in the instant case she was ordered to help out by a supervisor. According to her own testimony, however, the request to render assistance was directed to "all of the employees" rather than any specific person. The fact that only three of the employees responded to the request further indicates that it was not of a mandatory nature. In any event, it cannot be disputed that plaintiff's selection of a position on the downhill side of the car, where the sliding was most likely to occur, was voluntary and with knowledge of the risk involved.

The trial court did not err in granting judgment notwithstanding the verdict.

Affirmed.