# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 15-2562

———————————————————

Gerald E. Carlson; Douglas B. Carlson

*Plaintiffs - Appellants*

v.

Midwest Professional Planners, Ltd.

*Defendant - Appellee*

————————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

————————————

Submitted: June 13, 2016
Filed: July 11, 2016

————————————

Before RILEY, Chief Judge, MURPHY and SHEPHERD, Circuit Judges.

————————————

RILEY, Chief Judge.

Shortly before he died, James Carlson replaced his business partners, Gerald and Douglas Carlson—also his brother and cousin, respectively—as beneficiaries of his term life-insurance policy. The surviving Carlsons, who thus missed out on a $1.5 million payout, say James was only able to change the beneficiaries unilaterally because the agent, who earlier had prepared the policy, mistakenly failed to list the

Carlsons as co-owners and no one ever cured the omission. Sitting in diversity jurisdiction, see 28 U.S.C. § 1332(a)(1), the district court[1] dismissed the Carlsons' negligence suit against the agent's current employer, Midwest Professional Planners, Ltd. (Midwest). We affirm.

## I. BACKGROUND

According to the Carlsons, they bought the policy with James in 1995. Eric Madson, an agent for the issuing insurance company, sold the policy to them. On the application form, the Carlsons were listed as the beneficiaries and James as the insured, but the box labeled "Name of Applicant (Owner) If Other Than Proposed Insured" was left blank. By the clear terms of the policy, that made James the owner, with the power to "exercise all rights granted by the policy without the consent of anyone else."[2]

Madson later changed jobs, eventually joining Midwest in 2000. As far as we can tell from the complaint, Midwest had nothing to do with the policy on James's life before hiring Madson. In 2009, exercising his prerogative as the sole owner of the policy, James told Midwest to remove the Carlsons as beneficiaries. As non-owners of the policy, the Carlsons were powerless to stop the change. "Immediately" afterward, James died.

Five years and eleven months later, the Carlsons sued Midwest, claiming Midwest's "careless and negligent failure to designate [them] the owners of [the] policy" cost them the $1.5 million they would have received if they had remained

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

[2]The policy, attached as an exhibit to the Carlsons' complaint, is "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). It says: "The insured is the owner if no other person is named in the app as owner."

beneficiaries. Midwest moved for dismissal on the grounds that the Carlsons waited too long to file and, in any event, did not allege facts showing Midwest was negligent. See Fed. R. Civ. P. 12(b)(6). The district court agreed the Carlsons' complaint failed to state a viable claim and dismissed the case. The Carlsons appeal. See 28 U.S.C. § 1291 (appellate jurisdiction).

## II.    DISCUSSION

We review the complaint de novo, asking whether it "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). As we understand it, the Carlsons' theory is that Madson knew, or should have known, that the purpose of the policy—allegedly, to offset the damage the Carlsons expected to suffer when their business partner died—was undermined when the Carlsons were not listed as owners, which left their entitlement to the proceeds subject to James's whim. That knowledge, they say, obliged Madson to protect them by correcting the policy and adding them as owners. His negligent failure to do so, the argument goes, was "ongoing," in that he "could have remedied the situation up until the moment of James L. Carlson's death," including while he was working for Midwest.[3]

---

[3]To the extent the Carlsons' claim is based on Madson's alleged negligence at the time of the initial sale, as portions of the complaint might imply, the district court was unquestionably right that Midwest "simply cannot be responsible for Madson's actions under a theory of vicarious liability when Madson was not [Midwest's] employee" at the time. See, e.g., Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc., 597 N.W.2d 905, 910 (Minn. 1999). We also note the Carlsons did not plead any facts suggesting a continuing duty on Midwest's (or Madson's) part to alert them that they were not listed as owners of the policy, nor do they make any argument to that effect. Instead, they focus entirely on Midwest's alleged "failure to . . . designat[e] them policy owners."

This reasoning runs headfirst into the fact that from the moment the policy was issued—back in 1995—James owned it. Under the policy, "control[] [over] the policy during the lifetime of the insured," including the power to "name a new owner," belonged to James and James alone. Contrary to the Carlsons' implicit assumption, Madson had no authority to take it upon himself to change the policy, even if he remembered omitting something years earlier. Still less could Midwest—whose only apparent connection with the policy was that it hired Madson five years after he sold the policy on another company's behalf—force James to share ownership against his will. The Carlsons pled nothing contradicting the clear terms of the policy on this point.

Midwest cannot be liable for negligence for failing to do something it had no power to do. Cf., e.g., Mattson v. St. Luke's Hosp. of St. Paul, 89 N.W.2d 743, 745 (Minn. 1958) ("The exercise of reasonable care for the safety of invitees requires neither the impossible nor the impractical."). So, to borrow a phrase, the Carlsons "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Having reached that conclusion, we need not consider when the supposed cause of action accrued and whether Minnesota's six-year statute of limitations for professional malpractice, see Minn. Stat. § 541.05, subdiv. 1(5), had expired.

III.  CONCLUSION

The judgment is affirmed.

_____

-4-