MARK H. GORE, RESPONDENT, v. WHITMORE HOTEL COMPANY, APPELLANT.—83 S. W. (2d) 114.

Kansas City Court of Appeals. February 18, 1935.

912

*Geo. W. Meyer* and *Edmund B. Smith* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts, I. M. Lee* and *Wright Conrad* for appellant.

CAMPBELL, C.—The plaintiff, about eleven o'clock on the night of September 2, 1931, while walking on the sidewalk along the north side of the Muehlebach Hotel building, in Kansas City, was suddenly and violently pushed by other persons on the sidewalk into the street and against the side of a moving taxicab and severely injured. The persons who pushed plaintiff were endeavoring to escape being struck by a large paper bag containing water which had been thrown from a window of said hotel. Plaintiff brought this suit to recover for his injuries, obtained a judgment in the sum of $1500, from which the defendant has appealed.

The Muehlebach Hotel is an eleven-story building located on the southwest corner of the intersection of 12th Street and Baltimore Avenue.

The evidence discloses that the Veterans of Foreign Wars began its three-day convention on Sunday, August 31, 1931; that 250 to 300 of them were guests of the Muehlebach Hotel, which hotel was in the possession of the defendant and being operated by it. Beginning on the afternoon of August 31, placards, feathers, telephone

books, pillows, paper sacks; large and small, containing water and large laundry bags filled with water were thrown from the windows of the hotel to the sidewalks below. The "bombardment" continued until about 4:30 o'clock of the next morning and then for a time there was a lull. The throwing was resumed on the afternoon of Monday and continued into the night and was resumed on Tuesday afternoon and continued until plaintiff was hurt. The defendant's night manager testified that the condition "continued the full time of the convention."

No witness in giving his testimony estimated the number of objects thrown from the windows of the hotel but it may reasonably be inferred that the objects were numerous. The defendant's day manager, Mr. Osborne, testified that from time to time there was a "regular deluge" of bags containing water falling and that at other times a single bag was falling; that he "saw bags being thrown out of the windows, with water in them, and saw water poured out of pitchers, on the sidewalks, whenever a passer-by would pass down the street, they would try to throw water on them;" that he made no effort to stop the throwing "except probably" to go with the house officer "and see who these people were. . . ." The witness was asked:

". . . how long this business of bags being thrown out of the windows, how long it had been going on? A. I answered that in here (deposition), I said I thought it was as long as they were in town. I did not commit myself on that, because I didn't know for sure, so I didn't tell you so.

"Q. The question was every night the convention lasted, and your answer was—'Answer: I think so, as long as they were in town. . . .'

"Q. Regardless of whatever time, that was the answer you made, was it not? A. Which answer?

"Q. 'Answer: I think so, as long as they were in town,'—that is what you said? A. That is what I said, yes.

"Q. How about the crowds in the streets, Mr. Osborne, during the convention? A. Which streets? . . .

"Q. On Twelfth and Baltimore? A. On Baltimore there were many people out of the reach of the water on Twelfth—there were not so many people because the water fell over there—they were fed up on getting hit with the water.

"Q. And the crowd was the thickest up around the Dixon and Baltimore hotels? A. Right at Twelfth and Baltimore, where they were congested; because they was just out of reach of the water; they were standing watching the innocent passers-by come down the street and getting hit with the water, watching the fun, and the people standing there in the street.".

Further pertinent evidence will be stated in the course of the opinion.

It is plaintiff's theory that a public l nuisance was created and thereafter existed for three days in the hotel building; that. defendant, though it knew. of the condition, failed to exercise due care to abate it and that such failure resulted in injury to plaintiff.

The defendant contends that the court erred in refusing its request to direct verdict in its favor. In support of this insistence the defendant argues that the only negligence charged was that defendant knew or in the exercise of due care could have known that the particular bag, the falling of which resulted in injury to plaintiff, was likely to be dropped or thrown from a room in the hotel "in time, thereafter, by the exercise of ordinary care, to have prevented the occurrence." The petition sufficiently alleged facts showing that a nuisance was created and existed on premises in the exclusive possession and control of the defendant "on, and long prior" to the time plaintiff was injured; that the particular object, the falling of which caused the crowd on the street to push plaintiff against the taxicab, was of the same character as the other objects which had been falling from the windows of the hotel "on and long prior" to the time of injury; that the defendant knew that persons using the sidewalks were likely to be struck and injured by said falling objects; that the defendant knew, or by the exercise of ordinary care, would have known of the existence of said nuisance in time, thereafter, by the exercise of due care, to have remedied the same before plaintiff was injured and that it carelessly and negligently failed to do so. Thus, it is plain the petition charged that the falling of the particular object was only one of the many wrongful acts which created and maintained the nuisance. Considering all of the allegations of the petition we think it is not subject to the construction placed upon it by the defendant. [Plank v. Brown Petroleum Co., 61 S. W. (2d) 328; Atterbury et al. v. West et al., 122 S. W. 1106.]

The defendant further contends that the throwing of objects prior to the particular object did not cause the injury to plaintiff. True, the objects which were thrown prior to the particular one did not hurt the plaintiff. The evidence, however, shows that objects of the same general character were thrown from windows on both the north and east frontages of the hotel. This was sufficient to allow the jury to find that the defendant's offending guests were acting in concert both in creating and maintaining the nuisance and that the throwing of the particular object was merely one of the acts in the continuance of the wrong.

The reported cases show that a nuisance has not infrequently been created and maintained by sundry acts, which acts were of a similar character, and that only one of such acts caused injury. Each of these cases in effect holds that the injured person was entitled to recover damages resulting from the one act. [Liscomb v. Cincinnati, N. & C.

St. Ry. Co., 39 S. W. (2d) 991; Katz v. Hebing, 1 Pac. (2d) 1076; Charlton v. Jackson et al., 167 S. W. 670; Hogle v. Franklin Mfg. Co., 92 N. E. 794.]

The evidence of both plaintiff and defendant unmistakably shows that a nuisance was created and maintained in the hotel from sometime in the afternoon of August 31 until the time plaintiff was injured. [State ex rel. Renfrow v. Service Cushion Tube Co., 316 Mo. 640, 291 S. W. 106.]

The evidence further shows that the defendant was aware of the creation and maintenance of the nuisance and that damage was likely to result therefrom, or at least the jury could so find. When the defendant became aware of the existence of the nuisance it was its duty to exercise reasonable care to abate the condition and if it could by the exercise of such care have abated the nuisance prior to the time plaintiff was injured and negligently failed to do so then it is liable for the resulting damages. The defendant argues that the legal relations existing between it and its offending guests precludes recovery. Each guest to whom the defendant assigned a room was entitled to courteous treatment at the hands of the defendant and its employees and if the guest properly demeaned himself the defendant did not have right of access to the room of the guest save for the purpose of caring for it or for other purposes not necessary here to state. [Dazell v. Dean Hotel Co., 193 Mo. App. 379; Wolk et al. v. Pittsburgh Hotels Co., 42 A. L. R. 1081.] The guest was also under the duty not to engage in unlawful or disorderly conduct which endangered other guests or strangers and a wilful violation of that duty forfeited the right of the guest to possession of the room.

There was no evidence identifying any particular room from which any of the objects were thrown nor was there evidence identifying any of the offenders. Nevertheless, the defendant as a matter of law was under the duty to exercise reasonable care to identify the offenders and the rooms used by them in the perpetration of the wrong. Was there evidence showing that the defendant failed to perform that duty? The defendant's evidence was to the effect that its night manager, house officer and house detective went about the hotel, knocked on the doors of rooms occupied by guests, inquired of some of them whether or not they had thrown water into the street. In each instance the person to whom the inquiry was made indignantly denied that he had thus offended. The night manager, who was on duty each day from 5 P. M. until the next morning, said he went across the street and watched the windows of the hotel; that he saw objects falling but could not identify any of the rooms from which any of the objects were thrown. He chose to make the observations in the nighttime. There was evidence on the part of the defendant to the effect that if such observations had been made in the daytime

by one familiar with the hotel building the rooms from which the objects were thrown could have been identified. Mr. Fowler, for plaintiff, testified that he was a farmer residing near Lamar, Missouri; that he was in Kansas City during the convention, "was there every night;" that he saw water poured "out of pitchers, buckets and everything; I saw them pour it out of two and a half gallon buckets, right out of the window on the sidewalk, and sometimes see nothing but the bucket and the water. . . . I mean sometimes they would set a bucket of water in the window, and the crowd below would notice it, and they would say, 'Look out, everybody,' holler, 'Look out,' and they would not throw the water, leave it setting there, and when that crowd got by there, and new ones came along, they would pour it out on them, and the same way with the sacks. Q. Did you ever see people hesitate in the window with the sacks a little bit before they threw them? A. Yes, sir."

The defendant had the right to cause one of its employees to go into the several rooms each day for the purpose of servicing them. Having that right the jury could find that the defendant had the means at hand to ascertain the rooms from which pillows, laundry bags and telephone books were absent. It also had the means to locate the "two and a half gallon buckets," which were used by its guests and which, even this court knows, were not ordinary hotel guest room equipment. So the jury could find that the things which the witness Fowler saw could have been seen by defendant's employees; and that defendant had the means at hand to identify the rooms occupied by the persons who threw its pillows, laundry bags and telephone books into the street.

The mere failure of defendant to exercise ordinary care to identify the rioters was not sufficient to fix liability upon it. The defendant was not liable unless it could by the exercise of ordinary care have abated the condition in time to have prevented the injury to plaintiff. The evidence was sufficient to allow the jury to find that the defendant, though it had the right to evict the wrongdoers, negligently failed to identify them and, hence, never attempted to exercise such right. Having the legal right to evict the offenders, this court cannot say, as a matter of law that the defendant could not by the exercise of reasonable care have enforced this right prior to the time plaintiff was injured. The question was one for the jury.

The defendant criticises plaintiff's instructions Nos. 1 and 2.

Instruction No. 1 authorized a verdict for the plaintiff upon the jury finding, aside from matters not in controversy, that defendant suffered or permitted a public nuisance, as that term was defined in instruction No. 2, to exist in the hotel; that the defendant knew or by the exercise of ordinary care could have known of it; that the particular sack, the falling of which caused injury to plaintiff, was

a part of the public nuisance; that defendant by the exercise of reasonable care could have abated the condition before plaintiff was injured and negligently failed to do so, and that as a direct result thereof plaintiff was injured. Obviously, the instruction, apart from the reference to instruction No. 2, closely followed the petition and the evidence and if instruction No. 2 were proper then instruction No. 1 was not erroneous for the reasons stated in our discussion of the petition and of the evidence.

Instruction No. 2 told the jury "that the continued and repeated circumstance of objects falling from a building onto adjacent public streets and thoroughfares in a much traveled section of a city in such manner as to annoy, injure, or endanger, render insecure or interfere materially with the normal and ordinary use of adjacent sidewalks and public streets by pedestrians of any considerable number and on numerous and continuing occasions, is in and of itself a public nuisance even though the extent of the annoyance, injury or damage may be unequal or may vary in its effect on individuals."

The defendant argues that instruction Nos. 1 and 2 departed from the theory of negligence pleaded in the petition, submitted the cause upon the theory of nuisance and allowed a recovery without proof of negligence.

Instruction 2 said that the acts therein enumerated constituted a public nuisance. Under the evidence of both plaintiff and defendant the court could have told the jury that a public nuisance existed. The instruction was not improper though it was unnecessary. Nor do the instructions depart from the theory of negligence. Instruction 1 authorized a verdict upon the jury finding that a public nuisance existed, that defendant negligently failed to abate it and that such failure resulted in injury to plaintiff. This was sufficient. The defendant says the instruction was erroneous for the reason that the court failed to define the term "abated," which was used in the instruction. The defendant did not request the court to define the term. The point is therefore ruled against the defendant on authority of the following cases: Daggs v. St. Louis-San Francisco Ry. Co., 51 S. W. (2d) 164; Block v. U. S. F. & G. Co., 290 S. W. 429, 316 Mo. 278. The other criticisms of the instruction are ruled adversely to the defendant for the reasons stated in our discussion of the petition and defendant's request for directed verdict.

Plaintiff's instruction No. 3 follows.:

"The court instructs the jury that while it is the general rule that after a guest has been assigned to a room, he is entitled to the exclusive use thereof, subject only to the innkeeper's right of access thereunder at proper times and for such reasonable purposes as are necessary in the general conduct of the hotel, or to attend to the needs of the guest, or to meet an emergency, yet, if a guest at a

hotel creates a public nuisance, as such term is defined in these instructions, the innkeeper may thereupon terminate the relationship of innkeeper and guest at any time and may thereafter refuse to serve such guest and may eject with such means or force as may reasonably be necessary, any such guest refusing to vacate said room or leave said hotel.''

The defendant argues that this instruction was erroneous for the following reasons: (1) That it allowed the jury to find a verdict for the plaintiff on the theory that it was the duty of the defendant to expel one or more of its guests for the continued and repeated throwing of water bags and other objects from the rooms of the hotel; (2) that there was no evidence that any guests had thrown more than one object; (3) that it was the duty of defendant to expel guests regardless of whether it had or could obtain evidence establishing improper conduct on the part of the guests; (4) that there was no evidence identifying any particular guest or any particular room occupied by any of the wrong-doers. The criticisms of the instruction do not take into consideration the evidence elsewhere stated in this opinion to the effect that the continued throwing of similar objects from many rooms on the two frontages of the hotel were of such a character that the jury could find that the rioters were acting in concert; that the jury could find that the defendant had the means at hand to identify the particular guest and the room which he occupied and negligently failed to do so. The instruction, though abstract in its terms, correctly defined the legal relation between innkeeper and guest and stated their respective rights. [Wolk case, supra.] The instructions must be read together and when thus considered it is plain that the jury was not misled.

For the defendant Captain Reynolds, an experienced police officer, testified that he saw water thrown from the windows of the Muehlebach Hotel and from the windows of the Phillips Hotel but was unable to locate any of the windows from which water was thrown. His observations were made in the nighttime while he was in the street. The defendant offered to prove by the witness that the condition with respect to water being thrown from the ''Phillips Hotel and the Muehlebach Hotel, were identical;'' that ''he went into the Phillips Hotel for the purpose of ascertaining who or what guests of that hotel were throwing water out of the hotel windows, into Twelfth Street, and that he went to a number of rooms, on various floors of the upper floors of the building, and made a rather extended effort in that direction, but was unable to ascertain what room any of the water was being thrown from; that is, at the Phillips Hotel, and that all guests whose rooms he visited and inquired if they knew anything about who was throwing water from the windows, denied any knowledge of it.'' The offer was refused. The conversations be-

tween the witness and persons who wore occupying rooms in the hotel was hearsay. The statement that the witness "made a rather extended effort" to identify the offenders but was unable to do so was a conclusion. A part of the offer was inadmissible and therefore the whole of it was inadmissible. [Ryan v. Bradbury, 89 Mo. App. 665.]

The defendant offered to prove by the house detective of the Phillips Hotel that "he observed, from the Muehlebach Hotel and from the Phillips Hotel—where he was employed—water sacks, water and other articles, were being thrown out, and that it was approximately of the same degree of—that this was done in approximately the same degree in each hotel; that, as house detective of the Phillips Hotel, he called at a number of rooms and endeavored to ascertain whether or not they were guilty of such conduct, but was unable to identify any of the parties so guilty, with enough exactness to warrant any action against them. Further, that the guests so approached, as to whether or not they were guilty, would deny same, and become indignant at the management of the hotel for making such accusations." The statement that the witness "called at a number of rooms and endeavored to ascertain whether or not they were guilty of such conduct, but was unable to identify any of the parties so guilty, with enough exactness to warrant any action against them," was a legal conclusion and inadmissible. The offer included hearsay evidence which was also inadmissible. We find no reversible error in the record. The judgment is affirmed. *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.