ARLENE E. STANDAFER v. FIRST NATIONAL BANK
OF MINNEAPOLIS AND ANOTHER.[1]

January 21, 1955.

No. 36,331.

[1]Reported in 68 N. W. (2d) 362.

*Mordaunt & Mordaunt* and *Peter F. Walstad,* for appellant.

*Richards, Janes, Hoke, Montgomery & Cobb* and *Charles A. Bassford, for respondents.*

KNUTSON, JUSTICE.

This case has been here before. Standafer v. First Nat. Bank, 236 Minn. 123, 52 N. W. (2d) 718. In that appeal, after a verdict for plaintiff, we reversed the trial court's order denying a new trial for errors in the admission of evidence. While the issues of defendants' negligence and decedent's contributory negligence and assumption of risk were presented in that appeal, we did not deem it necessary to pass upon those questions. Inasmuch as these issues are now before us, it is necessary to state the facts somewhat more in detail than we did in our former opinion.

Defendant First National Bank of Minneapolis is the owner of the New York Life building in the city of Minneapolis, and defendant First Minneapolis Company is the operator thereof. Earl K. Standafer, plaintiff's decedent, owned the St. Louis Park delivery service and was experienced in the moving business. On May 12, 1948, a sixth-floor tenant of the New York Life building engaged decedent to move some furniture from that building to another location. Decedent engaged Eldon Hartse as a helper to assist him.

The building has four operating elevators, two on each side of a hall as one enters the building. One of the elevators is a freight elevator, which is constructed so as to have a greater weight-carrying capacity than the others. It is also designed differently. The top of the freight elevator is flat. It is composed of three flat steel sections with an angle iron about an inch high running around the edges and through the center to give it added strength. The steel top of the elevator is approximately six feet wide by four or five feet deep. The space between the front of the elevator and the floor is about one and one-half inches; between the back of the elevator and the solid wall of the shaft about two or two and one-half inches; and between the left side of the elevator and the left side of the shaft about two and one-half or three inches. The other side opens into the shaft of the adjoining elevator, so that when the two elevators are on different levels there is an open shaft on that side running the entire height of the building. There are no partitions or guard rails between the two elevators. The freight elevator is hung on six cables attached to an elevated beam which runs across the top of the elevator. The beam is about 18 or 20 inches high. On the open side of the elevator there are governing cables for the adjoining elevator which move up and down as that elevator moves. The front entrance to the freight elevator on each floor is hinged at the edges in such a way that it may be opened the full width of the car if the door is not wide enough to permit entry with the object to be moved. The elevator shaft is enclosed in a grillwork instead of a solid wall. It is possible to throw paper and other material through the grillwork. The top of the elevator is not lighted, the only light coming from the hall through the grillwork. When objects to be moved were too large to be placed inside the elevator, they customarily were moved on top of the freight elevator.

On the day involved here, when decedent and Hartse arrived at the building they went to the sixth floor and found some chairs and a long bookcase to be moved. They moved the furniture to the hall in front of the freight elevator. An operator was then asked to send up the elevator, and it arrived, operated by Jacob Verlo, an em-

ployee of defendants. The chairs were taken down in the elevator, but the bookcase was too long to place inside the elevator. Verlo advised decedent that it could be moved only on top of the elevator. He suggested that they go to the basement to procure more help. The three men thereupon went to the basement to get the janitor crew but found that they were out to lunch and would not return for some 15 minutes. Hartse then stated that they did not need more help, and they returned to the sixth floor. Verlo ran the elevator. He dropped the elevator, on signals from decedent and Hartse, so that the top of the elevator would be level with the floor. Decedent and Hartse then stepped out onto the top of the elevator to see what the situation was. The adjoining elevator shaft was empty the full six floors down. Hartse testified that he saw the open shaft; that there were pieces of paper and spots on top of the freight elevator; and that they could have decided not to move the bookcase if they had so desired. After examining the top, they picked up the bookcase, one on each end. Decedent walked backward onto the roof of the elevator. Hartse could not see him, since the bookcase was between them, but he felt that decedent set his end of the bookcase down on the beam. He waited for decedent to make the next move, but when nothing developed he called decedent's name. He received no answer, and, when he called again with no response, he pulled the bookcase back out onto the floor and discovered that decedent was not on the elevator. He and Verlo then went to the main floor and thereafter found decedent lying at the bottom of the adjoining shaft. He died from the injuries received in falling down the shaft. It is conceded that during the entire operation on the sixth floor the freight elevator did not move.

In this trial the jury again found for plaintiff. The trial court thereafter granted defendants' motion for judgment notwithstanding the verdict. The court was of the opinion that plaintiff had failed to establish negligence on the part of defendants and that it also appeared that decedent was guilty of contributory negligence as a matter of law. Judgment was entered, and this appeal is from the judgment.

The determinative questions presented for our consideration here are the sufficiency of the evidence to sustain the jury's finding of negligence and whether under the evidence decedent was guilty of contributory negligence as a matter of law.

■ Some question has been raised as to whether decedent was a business guest or a mere licensee. Decedent came upon the premises pursuant to a contract of hire with one of defendants' tenants.

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."[2] Restatement, Torts, § 332.

Decedent was a business guest in that he was invited to enter upon the premises to do business with and for one of defendants' tenants.

■ It is elementary that a landlord who retains possession and control of elevators and stairways for the common use of the tenants, although not an insurer of the safety of these facilities, owes a duty of exercising ordinary care to see that such facilities originally are constructed and subsequently are maintained in a reasonably safe condition for the use of the tenants who are themselves exercising ordinary care,[3] and with respect to the landlord's duties and liabilities a business guest of a tenant stands in the shoes of the tenant.[4]

■ A motion for judgment notwithstanding the verdict, whether based on negligence, contributory negligence, or assumption of risk,

[2]See, Restatement, Torts, § 332, *comment h;* Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260; Prosser, Torts, § 79; 26 Minn. L. Rev. 573; 27 Minn. L. Rev. 75.

[3]Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332; 26 Mich. L. Rev. 383, 401.

[4]See, Breimhorst v. Beckman, 227 Minn. 409, 417, 35 N. W. (2d) 719, 726; Williams v. Dickson, 122 Minn. 49, 141 N. W. 849; Nash v. Minneapolis Mill Co. 24 Minn. 501, 31 Am. R. 349; Pauckner v. Wakem, 231 Ill. 276, 83 N. E. 202, 14 L.R.A.(N.S.) 1118; 18 Am. Jur., Elevators and Escalators, § 32; 32 Am. Jur., Landlord and Tenant, § 665; Annotations, 75 A. L. R. 160, 58 A. L. R. 1415, 39 A. L. R. 298, 25 A. L. R. 1287.

accepts the view of the evidence most favorable to the verdict. Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

■ The jury could reasonably find that the top of the freight elevator was used for the purpose of moving the bookcase at the suggestion and invitation of defendants' employee and that it was the only means of moving bulky objects. They could also find that the top was poorly lighted and that no guard rails were provided. The construction of the elevator was such that a small angle iron surrounded the edge of the elevator with just enough height to constitute a tripping hazard. Furthermore, upon the evidence, the jury could reasonably find that it was customary, when using the top of the elevator for freight, to bring the adjoining elevator alongside to reduce the danger of falling and that this precaution was not taken on this occasion. Had the other elevator been so placed, it would have been impossible for decedent to fall into the open elevator shaft. Upon these facts, the jury could reasonably find that defendants' failure to take ordinary precautions for the safety of one using the elevator, who had a right to do so, constituted negligence and, also, that such negligence was the proximate cause of decedent's fall and consequent injury.

While usually it is true that little good is accomplished by attempting to distinguish cases in the field of negligence since the facts seldom are identical, we might say in passing that we believe that the facts in this case clearly are distinguishable from such cases as Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611; Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678; and Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243, relied upon by defendants. In the Hagsten case, for instance, there is a complete absence of proof of any act or failure to act on the part of defendant from which the jury could draw an inference of negligence. That is not true here. Defendants' departure from their customary caution of having an adjoining elevator opposite the freight elevator when the top of it was being used to load freight might well be enough to establish negligence. Sears, Roebuck & Co. v. Peterson (8 Cir.) 76 F. (2d) 243. In addition to

this, failure to provide proper lights; failure to provide a guard of some kind to prevent a person from falling while moving bulky objects; and failure to guard the governing cables next to the freight elevator, together with the angle-iron edge running around the elevator which furnished a good tripping obstacle, would permit an inference of negligence.

While it is true that the proof fails to show exactly how the accident happened, that likewise is true in many negligence cases. It is not necessary that there be eyewitnesses to the happening of an accident before there may be recovery. If the evidence establishes facts from which a jury reasonably may draw an inference of negligence and that it was a proximate cause of the happening of the accident, it no longer is a question of law for the court. It is only when there is such a complete absence of evidence from which an inference of negligence may be drawn or where the evidence is so conclusive one way or the other that reasonable minds must draw the same conclusion that the question becomes one of law. Nor is the case similar to Liebelt v. Krause, 235 Minn. 547, 51 N. W. (2d) 667, and cases of that kind. In that case the very thing happened that plaintiff was trying to accomplish, and he was injured as a result of accomplishing that which he was trying to do. That is not true here. The facts in this case are more nearly analogous to those in Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434; *Id.* 129 Minn. 449, 152 N. W. 753.

■ The questions of decedent's contributory negligence and assumption of risk probably are much closer. The fundamental and important distinction between contributory negligence and assumption of risk in its broader sense has been stated with clarity in Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395, and need not be repeated here. It is enough to note that assumption of risk differs from contributory negligence, based on carelessness, by being an exercise of intelligent choice. An assumption of risk may, however, be so unreasonable as to constitute contributory negligence.

In determining whether decedent was guilty of contributory negligence as a matter of law, we must not lose sight of the fact that

the burden of proving contributory negligence rests on defendants. In the absence of any evidence on this issue, plaintiff will prevail. Where there is evidence, direct or circumstantial, it usually is for the jury to say whether the defense of contributory negligence has been established. It is only when the facts are so conclusive that reasonable men must draw the same conclusion that the question of negligence or contributory negligence becomes one of law.

Whether decedent intentionally and unreasonably exposed himself to a danger—created by defendants' negligence—of which he had, or reasonably should have had, knowledge was for the jury. Upon the evidence, we cannot say that he was, or should have been, aware of his peril or that he so conducted himself that he was guilty of contributory negligence as a matter of law. It is true that he inspected the top of the elevator before proceeding with the loading. We cannot overlook, however, that his inspection was brief and made under unfavorable light conditions with respect to an elevator he had not previously used and with the top construction and manner of top loading of which he was unfamiliar. It cannot be said with certainty that he saw, or reasonably ought to have seen, the various dangers that were present on top of the unguarded elevator and adjoining elevator shaft. In the light of the surrounding circumstances, whether decedent intentionally and unreasonably exposed himself to a danger of which he had knowledge, or ought to have knowledge, and whether he conducted himself as a reasonable man should for his own protection were questions for the jury.

■ Defendants contend that, when decedent and Hartse decided to proceed without waiting for the janitor crew, they assumed the risk incident to proceeding alone. While this argument might be persuasive with a jury, it is not conclusive here. The jury could have found that Verlo wanted the janitor crew in order that he might be relieved of the duty of operating the elevator. They also could have found that decedent did not fully appreciate the dangers involved in moving a bulky object onto the top of this elevator. In Schrader v. Kriesel, 232 Minn. 238, 247, 45 N. W. (2d) 395, 400, we said:

"* * * Assumption of risk involves comprehension that a peril is to be encountered and a willingness to encounter it."

We cannot say as a matter of law that plaintiff comprehended the perils that were involved in using the top of this elevator and that he willingly encountered such peril.

We are of the opinion that the evidence sufficiently supports the verdict of the jury both as to negligence and contributory negligence; consequently, the court erred in granting judgment notwithstanding the verdict.

Reversed.